**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FRED TILLMON,

                Plaintiff,

      v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

                Defendant.

Case No. EDCV 16-1760 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

    Fred Tillmon ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Agency") denying his

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case. <u>See</u> Fed. R. Civ. P. 25(d).

application for Supplemental Security Income benefits ("SSI"). On August 17, 2016, Plaintiff filed a Complaint commencing the instant action. On January 4, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). On February 13, 2017, Plaintiff filed a memorandum in support of the Complaint ("P. Mem."). On March 20, 2017, Defendant filed a memorandum in support of the Answer ("D. Mem."). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

In 2010, Plaintiff filed a prior application for SSI. (AR 12, 100). The Agency denied Plaintiff's application initially on July 21, 2010, and on reconsideration on October 26, 2010. (AR 100). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and, on July 26, 2011, ALJ Teresa Hoskins Hart held a hearing to review Plaintiff's application. (AR 24-63). Plaintiff proceeded without counsel before ALJ Hart. (AR 24-35, 100). Vocational expert ("VE") Troy Scott also testified at the hearing, as did Michael Bliss, Plaintiff's friend. (AR 24, 42). On March 26, 2012, ALJ Hart found that Plaintiff was not disabled under the Social Security Act (the "Act"). (AR 100-07). Plaintiff sought review of ALJ Hart's decision before the Appeals Council, which denied Plaintiff's request. (AR 111). The decision became

the final decision of the Commissioner, (AR 111), and Plaintiff did not challenge the decision further. (See AR 93-94).

Plaintiff filed the instant application for SSI on July 29, 2013. (AR 12, 126). Plaintiff alleged a disability onset date of December 31, 2009. (AR 12, 114, 127). The Agency denied Plaintiff's application initially on October 31, 2013, and on reconsideration on January 16, 2014. (AR 141-45, 149-53). Plaintiff requested a hearing before an ALJ. (AR 155). On January 5, 2015, ALJ Michael Radensky conducted a hearing to review Plaintiff's application. (AR 12, 64-96). Plaintiff, represented by Brandon Sanchez, testified before ALJ Radensky. (AR 12, 64). VE Corinne J. Porter also testified at the hearing. (AR 12, 64). On February 24, 2015, ALJ Radensky found that Plaintiff was not disabled under the Act. (AR 12-19). Plaintiff sought review of ALJ Radensky's decision before the Appeals Council, which denied review on July 25, 2016. (AR 1-3, 6). The ALJ's decision therefore became the final decision of the Commissioner. (AR 1). Plaintiff commenced the instant action on August 17, 2016. (Dkt. No. 1).

### III.

### FACTUAL BACKGROUND

#### A. Background and ALJ Hearing Testimony

Plaintiff was born on August 7, 1960. (AR 244). He was 54 years old when he appeared before ALJ Radensky. (AR 70). Plaintiff did not complete high school and does not have a GED, but he is

able to read and write "basic stuff." (AR 70-71). Plaintiff had last worked "six [or] seven years" earlier, helping a neighbor maintain yards as a "cleaner." (AR 67, 91). Plaintiff had not applied for any work more recently. (AR 68-69).

There is some evidence in the record of a psychiatric commitment in 2012. (AR 360). The records indicate possible substance abuse and mental health issues. (AR 360-361). In addition, it appears that Plaintiff reported two episodes of custody, one in 2004 and one in 2008, and that he received mental health treatment in custody. (AR 360, 408). In later medical records, Plaintiff denied drug or alcohol use, but Plaintiff's treating physician mentioned in her notes that "[Plaintiff] smelled of ETOH [alcohol]." (AR 386).

Plaintiff claimed that he had been diagnosed with paranoia, schizophrenia, bipolar disorder, and "mental depression." (AR 72). He claimed that he could not "see [him]self" around "too many" people because when his "mind goes bad" he believes that people are "out to get" him. (AR 72). Plaintiff claimed that he took medication for his impairments, although it made him nauseated and caused "shakes" over his whole body for ninety minutes at a time twice a week. (AR 74-75). Plaintiff also claimed that his medications made him tired and made it difficult to get out of bed. (AR 76). Plaintiff maintained that he also experienced suicidal thoughts and hallucinations. (AR 77, 79). Plaintiff testified that he was "fine" when he took his medication, provided he was "by [him]self." (AR 81).

At the time of the 2015 hearing, Plaintiff lived with his sister, niece, and great nephew. (AR 82). Plaintiff claimed that he cooks TV dinners and does laundry "every now and then." (AR 83). Plaintiff claimed that he does not shop or drive and socializes only with his friend "Mike." (AR 84). Plaintiff takes the bus to appointments. (AR 84-85).

Plaintiff's attorney asked VE Porter whether an individual with Plaintiff's "difficulties with maintaining social functions, pace and persistence and his inability to act appropriately with the public" could perform Plaintiff's past relevant work. (AR 94). VE Porter testified that Plaintiff could return to his past work as a cleaner, noting that public interaction "wouldn't be a factor." (AR 94). Plaintiff's attorney asked whether Plaintiff would be required to "interact[] with the public in the sense of whoever's house he's cleaning." (AR 94). VE Porter testified that she "got the impression [Plaintiff] was doing lawn work." (AR 94). Plaintiff stated, however, that he never performed any work inside the house while he worked as a cleaner. (AR 95).

During the prior 2011 hearing before ALJ Hart, VE Scott testified that an individual with Plaintiff's vocational profile who was limited to the performance of "simple, repetitive tasks" with "limited social contact" would be able to perform Plaintiff's past work as a cleaner. (AR 58-60). VE Scott confirmed that the same individual could also return to Plaintiff's past relevant work if the individual also could not come into contact with the general public. (AR 60).

B. **Treating Psychiatrist Denise Persichino, D.O.**

In July 2013, Plaintiff visited Dr. Denise Persichino, D.O., complaining of a "real short" temper and depression and that his medication made him "very tired." (AR 384). Dr. Persichino observed that Plaintiff was "very talkative [and] energetic [and] hyperverbal" and continued his prescriptions. (AR 384).

In August 2013, Plaintiff visited Dr. Persichino, complaining of depression with "5-6 good days" per month, anger, panic attacks, and visual and auditory hallucinations. (AR 382). Dr. Persichino recommended supportive psychotherapy and continued Plaintiff's prescriptions. (AR 382).

On September 24, 2013, Dr. Persichino completed a Mental Disorder Questionnaire Form regarding Plaintiff's impairments. (AR 408-12). Dr. Persichino observed that Plaintiff suffered from mood swings, depression, homicidal thoughts, suicidal thoughts, visual and auditory hallucinations, and anxiety. (AR 408, 410). Dr. Persichino also stated that Plaintiff would sometimes "lose time" and spend up to half an hour in an "almost catatonic" state. (AR 410). Dr. Persichino stated that Plaintiff's mood swings and "racing thoughts" would affect his ability to concentrate and complete tasks in a "time efficient manner" and that he had "significant difficulty" with authority figures. (AR 411).

In December 2013, Plaintiff visited Dr. Persichino, reporting anxiety, visual and auditory hallucinations, and depression. (AR

433).  Dr. Persichino modified Plaintiff's medication regimen and prescribed supportive therapy.  (AR 433).

In January 2014, Plaintiff visited Dr. Persichino, reporting "improved" depression and that his hallucinations had been "good"; Dr. Persichino noted that Plaintiff was "more talkative [and] upbeat [and] happy" and continued his medication regimen.  (AR 431).

## C. **State Agency Medical Consultants**

On October 29, 2013, State Agency reviewing physician Dr. P. Ryan, M.D., reviewed Plaintiff's medical records and provided a medical assessment.  (AR 117-22).  Dr. Ryan stated that there had been "no material change" since ALJ Hart had found Plaintiff not disabled one year earlier.  (AR 118).  Dr. Ryan also stated that Plaintiff's allegations regarding the severity of his mental impairments were not supported by his treatment history, further noting that Plaintiff's condition "appear[ed] to get better during periods of compliance w/ treatment."  (AR 120).

On January 15, 2014, State Agency reviewing physician Dr. Joshua D. Schwartz, Ph.D., reviewed Plaintiff's medical records and provided a medical assessment.  (AR 132-37).  Dr. Schwartz opined that Plaintiff could carry out "simple one and two step tasks with adequate concentration, persistence and pace," but also stated that Plaintiff should have "no contact w/ the general public."  (AR 137).

1  D. **Work History Report**

2

3      In a September 2013 Work History Report, Plaintiff reported
4  that he worked as a "laborer" in 2002 and in providing "assistance
5  to [a] landscaper" in 2009.  (AR 272).  Plaintiff's duties as a
6  "laborer" included cleaning garden tools and removing them from a
7  truck.  (AR 273).  Plaintiff's duties in providing "assistance to
8  [a] landscaper" involved "clean[ing] and stack[ing] tools" and
9  using rakes, trimmers, and hedgers.  (AR 274).

10

11                              **IV.**

12              **THE FIVE STEP SEQUENTIAL EVALUATION PROCESS**

13

14      To qualify for disability benefits, a claimant must
15  demonstrate a medically determinable physical or mental impairment
16  that prevents him from engaging in substantial gainful activity[2]
17  and that is expected to result in death or to last for a continuous
18  period of at least twelve months.  Reddick v. Chater, 157 F.3d 715,
19  721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The
20  impairment must render the claimant incapable of performing the
21  work he previously performed and incapable of performing any other
22  substantial gainful employment that exists in the national economy.
23  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42
24  U.S.C. § 423(d)(2)(A)).

25

26

27  [2] Substantial gainful activity means work that involves doing
    significant and productive physical or mental duties and is done
28  for pay or profit.  20 C.F.R. §§ 404.1520, 416.910.

                              8

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one on the list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.   If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

Preliminarily, ALJ Radensky observed that ALJ Hart previously found Plaintiff not disabled. (AR 12). As a result, ALJ Radensky

10

ruled that there was a "rebuttable presumption of continuing nondisability" with respect to the unadjudicated period. (AR 12). ALJ Radensky found that Plaintiff had not shown "changed circumstances" and therefore adopted the findings of ALJ Hart's decision. (AR 12).

ALJ Radensky then applied the five-step process in Plaintiff's case. At step one, ALJ Radensky observed that Plaintiff had not engaged in substantial gainful activity since July 29, 2013, the application date. (AR 14). At step two, ALJ Radensky found that Plaintiff's severe impairments included psychotic disorder, not otherwise specified, and history of polysubstance abuse with physiological dependence. (AR 14). At step three, ALJ Radensky found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (AR 15).

ALJ Radensky then found that Plaintiff possessed the RFC to perform a full range of work at all exertional levels, with the nonexertional limitations that Plaintiff could perform "simple, repetitive tasks with limited social interactions" and was precluded from contact with the public. (AR 16). In evaluating Plaintiff's RFC, ALJ Radensky assigned "some weight" to Dr. Persichino's opinion and "great weight" to the opinions of State agency medical consultants. (AR 18).

At step four, ALJ Radensky determined that Plaintiff was capable of performing his past relevant work as a cleaner as actually and generally performed. (AR 18-19). ALJ Radensky therefore determined that Plaintiff was not disabled within the meaning of the Act. (AR 19).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by "substantial evidence" in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.

1993)).  If the evidence can reasonably support either affirming
or reversing that conclusion, the court may not substitute its
judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-
21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff challenges ALJ Radensky's decision on two grounds.
First, Plaintiff contends that ALJ Radensky failed to properly
consider Dr. Persichino's opinion.  (P. Mem. at 3-6).  Second,
Plaintiff contends that ALJ Radensky erred at step four by finding
that he could perform his past relevant work as a cleaner.  (P.
Mem. at 6-9).

The Court disagrees.  ALJ Radensky afforded proper weight to
Dr. Persichino's opinion and did not err by determining that
Plaintiff could return to his past relevant work.[3]  Accordingly,

---

[3] Defendant also argues that the Court should affirm the ALJ's
decision because Plaintiff has failed to rebut the presumption of
continuing nondisability or to challenge the ALJ's finding on this
issue.  (D. Mem. at 2-4 (stating that presumption of continuing
nondisability should be applied and presenting other arguments "in
the alternative")).  Plaintiff argues that his claims should be
considered "regardless of whether [Plaintiff] did not rebut the
presumption of continuing nondisability."  (P. Mem. at 2).  The
Court deems it appropriate to evaluate Plaintiff's proposed grounds
for reversal, particularly as the Ninth Circuit has disapproved of
applying the presumption of continuing nondisability where, as
here, it appears that the claimant was unrepresented by counsel at
the time of his prior claim.  See Lester v. Chater, 81 F.3d 821,
827-28 (9th Cir. 1995).

for the reasons discussed below, the Court finds that ALJ Radensky's decision must be AFFIRMED.

## A. ALJ Radensky Provided Specific And Legitimate Reasons To Assign Dr. Persichino's Opinion "Some Weight"

Plaintiff contends that the ALJ failed to properly consider Dr. Persichino's opinion. (P. Mem. at 3-6). The Court disagrees and finds that the ALJ provided specific and legitimate reasons for assigning Dr. Persichino's opinion "some weight."

Social Security regulations require the ALJ to consider all relevant medical evidence when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(e), 404.1527(c), 416.927(c). Where the Agency finds that the treating physician's opinion about the nature and severity of the claimant's impairments is well-supported by accepted medical techniques and is not inconsistent with the other substantive evidence in the record, that opinion is ordinarily controlling. 20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

Nevertheless, the ALJ is also "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42

14

U.S.C. § 405(g); see also Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("Where the evidence as a whole can support either outcome, [the court] may not substitute [its] judgment for the ALJ's."); Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ need not address every piece of evidence in the record, but only evidence that is significant or probative. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Furthermore, "[t]he treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and whether it is consistent with other evidence in the record. See 20 C.F.R. § 404.1527. The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751). To reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so. Andrews, 53 F.3d at 1041. Where the treating physician's opinion is contradicted by other doctors, the Commissioner may reject the opinion by providing "specific and legitimate reasons" for doing so that are supported by substantial evidence in the record. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

ALJ Radensky cited specific and legitimate reasons supported by the record for giving "some weight" to Dr. Persichino's opinion. As ALJ Radensky noted, Plaintiff was able to complete various household tasks and answer questions during the hearing without difficulty. (AR 18). In affording "great weight" to the opinions of the State agency medical consultants, ALJ Radensky found that the consultants' opinions were "consistent with the objective medical evidence" and similarly noted that Plaintiff was able to cook, use public transportation, and handle money. (AR 18). Although Plaintiff is correct that he need not be "incapacitated" to be disabled, (P. Mem. at 5), ALJ Radensky was permitted to consider whether any restrictions assessed by Dr. Persichino were inconsistent with Plaintiff's demonstrated abilities. See Rollins, 261 F.3d at 856. ALJ Radensky also properly considered whether Dr. Persichino's opinion was consistent with the record as a whole. 20 C.F.R. § 404.1527. Accordingly, the ALJ provided specific and legitimate reasons for the weight he assigned to Dr. Persichino's opinions.

Moreover, the Court observes that ALJ Radensky afforded Dr. Persichino's opinion "some weight," not "no weight" or "little weight." Dr. Persichino's opinion stated that Plaintiff's limitations would sometimes cause him to "lose time," affect his ability to concentrate and complete tasks in a "time efficient manner," and cause "significant difficulty" with authority figures. (AR 410-11). ALJ Radensky's RFC specifically limited Plaintiff to "simple repetitive tasks with limited social interactions" and no "contact with the general public." (AR 16). The RFC assessed by

ALJ Radensky therefore appears to account for many of the limitations observed by Dr. Persichino, consistent with ALJ Radensky assigning that opinion "some weight."  (See AR 18 (stating, after evaluating Dr. Persichino's opinion, that "the limitations assessed herein properly take into consideration [Plaintiff's] allegations and limitations found in the record")).

The Court therefore disagrees with Plaintiff's contention that ALJ Radensky improperly evaluated Dr. Persichino's opinion and finds that ALJ Radensky provided specific and legitimate reasons for assigning it "some weight."

**B.**  **ALJ Radensky Did Not Err In Determining That Plaintiff Could Return To His Past Relevant Work**

Plaintiff contends that ALJ Radensky erred at step four by finding that he could perform his past relevant work as a cleaner. (P. Mem. at 6-9).  The Court disagrees.

Once the ALJ determines a claimant's RFC, he then compares these limitations with the job duties of the claimant's previous work.  At step four, the question is whether the claimant can perform "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."  Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001); Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) (claimant must be able to perform past relevant

17

work either as actually performed or as generally performed in the national economy).  When classifying a claimant's past relevant job as "actually" performed, ALJs consider "a properly completed vocational report" and the claimant's testimony.  Pinto, 249 F.3d at 845; see also Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *1, *3 (SSA 1982) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work.").

The best source for information regarding how an occupation is "generally performed" is usually the Dictionary of Occupational Titles ("DOT").  Pinto, 249 F.3d at 845-46 (citations omitted). However, an ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the deviation.  Id. at 846 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (1995)); see also SSR 82-61, 1982 WL 31387, at *2 (SSA 1982) (ALJ may obtain testimony from VE where available documentation is not "sufficient to determine how a particular job is usually performed").  Here, ALJ Radensky found that Plaintiff could perform his past relevant work as actually performed and as generally performed in the regional and national economy.  (AR 19).  The ALJ based his opinion principally on the testimony of VE Scott regarding Plaintiff's prior application for benefits.  (AR 19).

Plaintiff claims that, because some of the tasks listed in the DOT definition of "cleaner" appear to involve contact with the

public and social interactions, Plaintiff is precluded from performing work as a cleaner. (P. Mem. at 7-8). Specifically, Plaintiff claims that a cleaner must "keep premises of office building, apartment house, or other commercial or institutional buildings in clean and orderly condition and also set up table and chairs in auditoriums or halls. This would consist of keeping common areas and places open to the public clean where [Plaintiff] may have to deal or come into contact with the public. The RFC also noted having limited social interactions. However, it does not address with who, for example with supervisors or co-workers. As this job would also require [Plaintiff] to deliver messages or transport small equipment or tools between departments, which would lead to social interactions between co-workers and supervisors and possibly with the general public [sic]. Based on the above-mentioned, [Plaintiff] would not be able to perform his past relevant work as a cleaner." (Id. at 8).

Plaintiff is incorrect. The mere fact that some of the tasks in the DOT definition of "cleaner" may result in contact with the public or social interactions does not mean that the ALJ incorrectly relied on VE testimony that Plaintiff could return to his past relevant work. The Ninth Circuit's analysis of the DOT in Gutierrez v. Colvin is instructive. In Gutierrez, the claimant was unable to lift her right arm above her shoulder, and her RFC included limitations to her ability to reach above shoulder level. A VE opined that the claimant could work as a cashier and stated that his opinion was consistent with the DOT's description of working as a cashier. The ALJ therefore concluded that the claimant

could work as a cashier.  On appeal, the claimant argued that the DOT definition of "cashier" required frequent "reaching," and the ALJ was required to ask specific questions of the VE regarding the claimant's ability to work as a cashier given her inability to reach overhead.  See Gutierrez v. Colvin 844 F.3d 804, 807 (9th Cir. 2016).

The Ninth Circuit affirmed the ALJ's opinion, observing that the DOT definition specified several duties required of only some cashiers.  Id. at 808 ("The [DOT's] definition of 'cashier' [is] a windy, highly technical, 1000-word effort that specifies that a cashier may need to 'reach frequently,' but also be able to read 'adventure stories and comic books,' write in 'cursive,' 'interpret bar graphs,' and follow 'instructions for assembling model cars.'").  The Ninth Circuit ruled that the ALJ did not err "because there was no apparent or obvious conflict between the [VE's] testimony that [the claimant] could perform as a cashier, despite her weight bearing and overhead reaching limitations with her right arm, and the [DOT's] general statement that cashiering requires frequent reaching."  Id.  The Ninth Circuit also noted that, "[f]or a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent," i.e., "the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected."  Id.

Gutierrez's treatment of the DOT is relevant here. Plaintiff's argument relies heavily on several elements of the DOT

definition of "cleaner" that may be required of only some cleaners. See DOT 381.687-014 (cleaner keeps premises in clean and orderly condition and cleans and polishes lighting fixtures, marble surfaces, and trim; may cut and trim grass, shovel snow, deliver messages, transport small equipment or tools, or set up tables and chairs in auditorium or hall). Moreover, although social interactions and contact with the public may be incidental to some work as a "cleaner," it is unclear that social interaction and public contact could necessarily be characterized as "essential, integral, or expected" in this occupation such that there is a "conflict" between the DOT definition and VE testimony that Plaintiff could work as a cleaner. Gutierrez, 844 F.3d at 808.

Here, in the 2011 hearing before the ALJ, VE Scott confirmed that that an individual with Plaintiff's vocational profile who was limited to the performance of "simple, repetitive tasks" with "limited social contact" and no contact with the general public would be able to perform Plaintiff's past work as a cleaner. (AR 58-60). VE Scott reported that his testimony was consistent with the DOT. (AR 57). In the second hearing, on January 5, 2015, VE Corine Porter specifically considered whether Plaintiff's work would require contact with the public and determined that it would not, particularly because Plaintiff's work as a "cleaner" principally involved "doing lawn work." (AR 94). Defendant is correct that Plaintiff has made no showing that his "speculative, lay interpretation of the DOT" should overcome expert VE testimony. (D. Mem. at 11-12 (citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005))); see also SSR 00-4P, 2000 WL 1898704, at *2 (SSA

2000) (ALJ is entitled to rely on VE's experience in job placement to account for a particular job's requirements).

The Court therefore disagrees with Plaintiff's contention that ALJ Radensky erred at step four by finding that Plaintiff could perform his past relevant work as a cleaner.[4]

\\
\\
\\
\\
\\
\\

---

[4] Moreover, as Defendant notes, a conflict between Plaintiff's RFC and the DOT definition of "cleaner" affects whether Plaintiff may work as a cleaner as that occupation is "generally performed." (D. Mem. at 12); see also Pinto, 249 F.3d at 845-46. At step four, a claimant is not disabled if he can perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." See id. at 845. ALJ Radensky found that Plaintiff could work as a cleaner "as actually and generally performed." (AR 19 (emphasis added)). Plaintiff's arguments regarding the DOT are irrelevant to whether Plaintiff could work as a cleaner as he had actually performed that work in the past. Therefore, it appears that the error asserted by Plaintiff is inconsequential to the ultimate non-disability determination and therefore harmless. See Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008).

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  June 16, 2017

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**